[No. 46241. En Banc. December 20, 1979.]

CHARLES W. LEWIS, *Appellant, v.* ITT CONTINENTAL BAKING COMPANY, *Respondent.*

*Thomas P. Graham* and *Graham, Cohen, Wampold, Wesley & Munro,* for appellant.

*William M. Bauer* and *Detels, Draper & Marinkovich,* for respondent.

WRIGHT, J.—This is an appeal from a Superior Court decision granting an injured workman's application to reopen his claim because of aggravation. The Court of Appeals by a 2-to-1 vote reversed the Superior Court in an unpublished opinion so the matter came here as a matter of right. We affirm the trial court.

The relevant facts are simple. Charles W. Lewis, claimant, injured his back November 27, 1972, while employed as a bakery janitor. He was moving 55-gallon drums of lard when he slipped on some spilled lard and fell, and then two drums fell onto him. He continued working, but soon afterwards his back began to hurt. The next morning he was worse and went to see his physician, Dr. Peter Fisher. Dr. Fisher recommended physical therapy, including hot baths and exercises. For a considerable time Lewis saw Dr. Fisher at least once a month.

On July 11, 1973, the claim was closed with a permanent partial disability award of 6 percent of the maximum allowable for the unspecified. Lewis subsequently returned to Dr. Fisher with the complaint that he was worse. Dr. Donald L. Hubbard, another physician who examined Lewis, completed an application to reopen the claim for aggravation on about November 14, 1973. The Department of Labor and Industries denied the application January 14, 1974. Lewis appealed but the Board of Industrial Insurance Appeals affirmed the department's action. Lewis then appealed to the Superior Court which reversed the board's action. The employer appealed to the Court of Appeals.

The question is: Does objective medical evidence support the trial court's finding that an aggravation of claimant's

injury occurred between the closing date of his claim (July 11, 1973) and the date of the denial of his application to reopen that claim (January 14, 1974)?

In *Sylvester v. Imhoff,* 81 Wn.2d 637, 503 P.2d 734 (1972), we said at page 639:

> We are firmly committed to the rule that the findings of fact of the trial court will not be disturbed on appeal if evidence is present in the record to support the findings. "[T]he constitution does not authorize this court to substitute its findings for that of the trial court." *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 575, 343 P.2d 183 (1959), . . .

Under this rule we are not involved with weighing the evidence.

We are only concerned with those items which must be proved by medical evidence. Medical evidence—based at least in part on objective symptoms—must show that an aggravation of the industrial injury resulted in increased disability. *Dinnis v. Department of Labor & Indus.,* 67 Wn.2d 654, 656, 409 P.2d 477 (1965); *Phillips v. Department of Labor & Indus.,* 49 Wn.2d 195, 197, 298 P.2d 1117 (1956); *Moses v. Department of Labor & Indus.,* 44 Wn.2d 511, 517, 268 P.2d 665 (1954). Since we have not been asked to reexamine the rule requiring that certain matters in an aggravation case be proved by medical testimony based on objective findings, we will not do so now.

Medical testimony is required to show that there actually was a worsening or aggravation between the terminal dates. *Phillips v. Department of Labor & Indus., supra.*

With reference to aggravation, the testimony of Dr. Fisher is clear. At one point he replied:

Q. Doctor, based on your knowledge of this patient, were you able to form an opinion as to whether his condition had improved, worsened or changed or stayed the same between June of '73 and January of '74?
A. I have an opinion.
Q. What is your opinion?
A. I think it worsened.

At another point he said:

> I again convinced myself by history that there was worsening and remained my professional opinion that there was a worsening of his condition. I was aware that I felt that he was not the type of worsening that easily lent itself to documented objective evidence, but that did not preclude my opinion that he was definitely worse, and my certainty that he was worse. I re-examined the patient on that date, based on a further history, made me zero in rather carefully on an area in particular and review all of the files, and I performed again portions of an examination and made findings which, in my opinion, were definite objective evidences of aggravation as compared with findings in a previous examination which was a comparable examination with which to base an opinion about the presence or absence of aggravation.

As to whether his testimony concerning aggravation was based upon objective findings, he testified:

Q. Do you perform many of these tests in such a manner as to preclude or minimize the possibility of faking or malingering?

A. Yes, they all are done with that in view as a matter of routine.

Q. How do you do that so that you can preclude or minimize this possibility?

A. In general it involves repetition, doing the same things several times, doing it in a way in which the patient cannot see or is not aware of what you are doing. Doing it in an unexpected manner or a different or unexpected way involves total observations so that you make observations, not only at the time of obvious observation in an examining room setup but also when you're having total experience with the patient walking in the office, sitting down in your chair, getting undressed. It has to do with repeating the same thing in different ways and I think I'm getting repetitious now. I think I've answered that the best way I can.

This last quoted testimony reveals a method of examination substantially similar to that approved in *Hinds v. Johnson*, 55 Wn.2d 325, 347 P.2d 828 (1959).

In *Knowles v. Department of Labor & Indus.*, 28 Wn.2d 970, 184 P.2d 591 (1947), it was held it is not necessary for a doctor in an aggravation case to expressly say that there is "aggravation". The court also stated that there is a place for both lay and medical testimony in such a case. *See also Wilber v. Department of Labor & Indus.*, 61 Wn.2d 439, 478 P.2d 684 (1963) and *Pend Oreille Mines & Metals Co. v. Department of Labor & Indus.*, 63 Wn.2d 170, 385 P.2d 856 (1963).

Having found substantial evidence to support the decision of the trial court, we reinstate that court's decision and reverse the decision of the Court of Appeals majority.

UTTER, C.J., ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and RYAN, J. Pro Tem., concur.